UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANIBAL COLON JR.,

    Plaintiff,

v.

THE LITIGATION PRACTICE GROUP PC,

    Defendant.

Case No. 6:22-cv-02343

## COMPLAINT

**NOW COMES** ANIBAL COLON JR. ("Plaintiff") by and through his undersigned attorney, complaining as to the conduct of THE LITIGATION PRACTICE GROUP PC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organization Act ("CROA") pursuant to 15 U.S.C. § 1679 *et seq.*, the Florida Credit Service Organization Act ("FCSOA") pursuant to Fla. Stat. § 817.700 *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") pursuant to Fla. Stat. § 501.201 *et seq.*

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA pursuant to 15 U.S.C. § 1679 *et seq.*, 28 U.S.C. §§ 1331 and 1337, as the action arises

1

under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in the Middle District of Florida and all of the events or omissions giving rise to Plaintiff's claims occurred in this Middle District of Florida.

## PARTIES

4. Plaintiff is a consumer and a natural person over 18-years-of-age who, at all-times relevant, resided in the Middle District of Florida.

5. Defendant is a credit repair organization and law corporation that offers its customers the ability to eliminate and resolve their debit issues through Defendant's services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California 92780.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In November 2019, Plaintiff had a number of debts which were impacting his credit, prompting him to begin looking for companies who may be able to assist him in improving his credit and resolving his obligations.

8. After diligent research, Plaintiff happened upon Defendant due to its representations that it could help consumers improve their creditworthiness.

9. As such, Plaintiff spoke with Defendant who advised Plaintiff that it would be able to remove negative information from his credit profile, resolve obligations with creditors and improve his credit score.

10. On November 24, 2019, Plaintiff entered into an agreement in connection with Defendant's credit repair services.

11. As part of agreement, Plaintiff paid Defendant a recurring monthly fee of $278.92 in exchange for Defendant's services that included removing erroneous or inaccurate information appearing on Plaintiff's credit report by contesting debts.

12. After months of making payments and informing Defendant of the inaccurate information which he wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

13. Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff continued making recurring monthly payments with the hopes of improving his creditworthiness.

14. Defendant's conduct in representing that it could effectively dispute and remove Plaintiff's information on his credit reports was inherently misleading and deceptive.

15. Plaintiff continued to work with Defendant on a month to month basis into 2020 following their initial agreement. However, Plaintiff grew tiresome of Defendants failure to uphold its promises.

16. Eventually, after making multiple payments to Defendant, Plaintiff became extremely frustrated and distressed that he had been making payments yet not seeing any results on the part of Defendant.

17. Upon information and belief, Defendant retained fees for services prior to such services being fully performed, as Defendant's retention of Plaintiff's monthly payment, at least in part, went towards purported legal proceedings that have not, and may never, come about.

18. Even further, the contract between Plaintiff and Defendant fails to include the information and disclosures Defendant was required to provide to Plaintiff under federal and state law.

19. At no point did Defendant provide Plaintiff any of the disclosures required by federal and state law.

20. Defendant's failure to provide Plaintiff the relevant information and disclosures inhibited Plaintiff's ability to chart an intelligent course of conduct in connection with his dealings with Defendant.

21. Subsequently, on September 22, 2020, Plaintiff terminated its contact with Defendant due to Plaintiff not seeing any positive changes occur in Defendant's debt relief program

22. Following Plaintiff's termination of his relationship with Defendant, Plaintiff spent months attempting to dig himself out of the hole created by Defendant's deficient provision of credit repair services.

23. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

## DAMAGES

24. Defendant's failure to sufficiently take steps to improve Plaintiff's creditworthiness though its debt relief program underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

25. Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that Defendant promised Plaintiff that it would clean up Plaintiff's credit, pay off his creditors, and improve his credit score.

26. As such, Defendant misrepresented the nature of its services by not properly engaging with Plaintiff's creditors to negotiate his obligations and improving his creditworthiness.

27. Plaintiff suffered severe emotional distress, as well as significant out of pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of his bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of his federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violations of CROA §§ 1679b(a)(3)-(4)

29. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

30. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a. **Violations of CROA §§ 1679b(a)(3)-(4)**

31. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

32. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it provided Plaintiff. Defendant represented to Plaintiff that his $278.92

payment would go towards resolving and eliminating his debt; however, he was discovered that his payments went solely towards Defendant's fees and did not go toward resolving any of his obligations. Plaintiff's decision to enroll in Defendant's services was carefully crafted upon considering his financial means, and upon realizing that extent to which he was deceived, Plaintiff suffered emotional distress as he lacked the financial means to both pay Defendant as well as the creditors he sought to avoid by enrolling in Defendant's services.

33. Defendant further deceptively represented the nature of its services when it suggested that it would clean up his credit and improve his credit score by paying off his creditors through Defendant's reoccurring monthly fees. Despite this representation Plaintiff saw his credit score depressed and none of his obligations to his creditors was resolved.

### COUNT II - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
**Violations of CROA § 1679b(b)**

34. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

35. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Included within Defendant's services was legal representation in the event Plaintiff got sued, and Plaintiff's payments went towards these fees. Despite Defendant promising

to perform such services, it nevertheless charged and accepted payment before such services were fully performed.

### COUNT III - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violation of CROA § 1679c

36. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

37. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### COUNT IV - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violation of CROA §§ 1679d(4) & 1679e

38. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines

8

the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

39.     Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

**WHEREFORE**, Plaintiff, ANIBAL COLON JR., respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.      Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.      Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.      Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.      Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.      Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT V - VIOLATIONS OF THE FLORIDA CREDIT SERVICE ACT

52.     Plaintiff is a "buyer" as defined by Fla. Stat. § 817.7001(1).

53. Defendant is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a).

### a. Violation of FCSOA § 817.7005

54. The FCSOA, pursuant to Fla. Stat. § 817.7005, provides a list of prohibited conduct for credit services organizations.

55. Pursuant to Fla. Stat. § 817.7005(1), a credit service organization must not charge or receive any money or other consideration prior to full and complete performance of its services, unless it has maintained a surety bond with the state, in which case the sums paid must be retained until full performance of the services are rendered.

56. Defendant violated Fla. Stat. § 817.7005(a) through its charging of Plaintiff prior to full and complete performance of its services without reimbursing Plaintiff for its incomplete services.

57. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer.

58. As outlined above, Defendant violated the above referenced provision of the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### COUNT VI - VIOLATIONS OF THE FLORIDA CREDIT SERVICE ACT
#### Violation of FCSOA § 817.704

59. The FCSOA, pursuant to Fla. Stat. § 817.704(1), outlines what must be included in a contract between a credit service organization and a consumer, including "[a] conspicuous statement in boldfaced type, in immediate proximity to space reserved for the signature of the buyer, as follows: 'You, the buyer, may cancel this contract at any time prior to midnight of the fifth day after the date of the transaction." Fla. Stat. § 817.704(1)(a) (emphasis added). Further, pursuant to Fla. Stat. § 817.704(2), the contract must be accompanied by a notice of the right to cancel which similarly outlines the required Florida five day window.

60. Defendant violated §§ 817.704(1)(a) & (2) through its failure to properly provide a conspicuous statement in boldface type and the length of time for cancellation as required by Florida law.

**WHEREFORE**, Plaintiff, ANIBAL COLON JR., respectfully requests that the Honorable Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

    c. Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

    d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

    e. Awarding any other relief as this Honorable Court deems just and

appropriate.

### COUNT VII - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

61. The transactions giving rise to these claims constitute "trade or commerce" defined by Fla. Stat. § 501.203(8).

62. Pursuant to the FDUTPA § 501.204(1), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

63. The provisions of the FDUTPA "shall be construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

64. Violations of the FDUTPA further consider the rules promulgated in connection with the Federal Trade Commission Act, the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts, as well as any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices. *See* Fla. Stat. § 501.203.

65. Defendant violated § 501.204(1) through the nature of the unfair practices of promising Plaintiff it would improve his credit score and pay of his creditors. Defendant deceptively engaged Plaintiff through its representation that it will resolving and eliminate his debt by making recurring monthly payments to Defendant; however,

12

his payments went solely towards Defendant's fees and did not go toward resolving any of his obligations. As outlined above, Defendant unfairly failed to provide Plaintiff with its services of improving Plaintiff's credit and paying off his obligation through its debt relief program. All of the above conduct falls within the broad protections afforded Florida consumers under the FDUTPA.

**WHEREFORE**, Plaintiff, ANIBAL COLON JR., respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff his actual damages in an amount to be determined at trial pursuant to the Fla. Stat. § 501.211(2);

c. Enter a declaratory judgment finding that the above referenced conduct is in violation of the above referenced statutes and regulations, pursuant to Fla. Stat. § 501.211(1);

d. Award Plaintiff equitable relief, including enjoining Defendant from further violations, pursuant to Fla. Stat. §501.211(1);

e. Award Plaintiff costs and reasonable attorneys' fees pursuant to Fla. Stat. §501.2105;

f. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: December 16, 2022                              Respectfully Submitted,


<u>*/s/ Alexander J. Taylor*</u>
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com